(C. D. 1567)

Semca Co. *v.* United States

United States Customs Court, Second Division

(Decided December 17, 1953)

*Siegel, Mandell & Davidson* (*Joshua M. Davidson* of counsel) for the plaintiff. *Warren E. Burger*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Lawrence, Judge: An importation described in the record variously as "One Day alarm movements," "alarm clocks," or "alarm clocks movements" was classified and assessed with duty by the collector of customs as follows:

That portion consisting of the movements together with the dial and hour hands (represented by exhibit 1–A) as watch movements less than one and seventy-seven one-hundredths inches wide and more than one and one-half inches wide, having one jewel, at 75 cents each, pursuant to the provisions of paragraph 367 (a) (1) (2) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 367 (a) (1) (2)); the portion of the importation (represented by exhibit 1–B), claimed by the Government to be parts of watchcases and which are not provided for *eo nomine*, was relegated to the provision for articles or wares, not specially provided for, whether partly or wholly manufactured, composed wholly or in chief value of metal, and assessed with duty at the rate of 22½ per centum ad valorem in accordance with the provisions of paragraph 397 of said act (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802.

It is the contention of plaintiff that the imported articles are, in fact, alarm time-keeping movements which should be treated as entireties and dutiable at the rate applicable to the movements.

The following statutory provisions will be adverted to *infra*:

Paragraph 367 (a) (1) (2) and (f), Tariff Act of 1930:

PAR. 367. (a) Watch movements, and time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, whether or not designed to be worn or carried on or about the person, all the foregoing, if less than one and seventy-seven one-hundredths inches wide, whether or not in cases, containers, or housings:

(1) If more than one and one-half inches wide, $1.25 each; * * *

(2) in the case of any of the foregoing having no jewels or only one jewel, the above rates shall be reduced by 40 per centum;

*      *      *      *      *      *      *

(f) All cases, containers, or housings, designed or suitable for the enclosure of any of the foregoing movements, mechanisms, devices, or instruments, whether or not containing such movements, mechanisms, devices, or instruments, and whether finished or unfinished, complete or incomplete, except such containers as are used for shipping purposes only:

Paragraph 397 of said act, as modified by the General Agreement on Tariffs and Trade, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

*      *      *      *      *      *      *

Composed wholly or in chief value of * * * other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

*      *      *      *      *      *      *

Other (except slide fasteners and parts thereof)_____ 22½% ad val.

At the trial of this case, the following exhibits were introduced in evidence:

Exhibit 1, representing the imported merchandise, was segregated and received in evidence as exhibit 1–A, consisting of the movement with an alarm feature together with the dial face and time-indicating hands, and exhibit 1–B, which for present purposes may be identified as a circular, metal, cap-shaped cover to enclose the back of the movement, and it is this portion of the importation which is the subject of this controversy.

Exhibit 2, the same as exhibit 1 before it was segregated into exhibits 1–A and 1–B.

Illustrative exhibit 3, a time-keeping device attached to a lyre-shaped metal back with a musical alarm feature fastened to it, separate and apart from the movement, the alarm feature being operated by an arm which reaches out from the movement.

Illustrative exhibit 4, a double-faced timepiece about 4½ inches square with a single movement between the two faces but without any alarm feature.

Illustrative exhibit 5, a movement similar to that in exhibit 1, a timepiece with a dial about 4 inches square being enclosed in an outer case of metal excepting for the face which is of glass.

Exhibit A, a cardboard cigarette box, approximately 5⅞ by 4¼ by 1½ inches in dimensions, decorated with metal trimmings and with a time-keeping device, marked exhibit A–1, approximately 2½ inches square, inserted in the cover of the box.

Exhibit B, a watch in all respects like exhibit 1, fitted in a folding leather case similar to the familiar traveling or boudoir clock.

Two witnesses, Samuel Jack Kaufman and Harry Arthur Sampson, testified on behalf of the plaintiff, and Aaron Balmages testified for the defendant.

Kaufman stated that he had been president of the plaintiff company since it started in business in this country in 1939 and was engaged in the importation and manufacture of clocks and watches; that he holds a degree in mechanical engineering and is a designer and in charge of production for the company. He testified to his familiarity with the imported merchandise, having collaborated in designing the movement, and that exhibit 1 is a complete clock movement which is composed of time and alarm elements.

The witness further testified that exhibits 1–A and 1–B constitute an entirety; that exhibit 1–A contains the part of the movement which is made up of the time and alarm elements; and that exhibit 1–B constitutes that part of the movement described as the bell for the alarm portion of the movement and without which the alarm cannot operate. In other words, this witness regarded exhibit 1–B as a part of the movement, the primary function of which was to receive the stroke of the hammer. It will be recalled that exhibit 1–B represents that portion of the importation which the collector regarded as a part of the case and, since there is no *eo nomine* provision for parts of cases, classified it as an article of metal, not specially provided for, in paragraph 397, *supra*.

Kaufman also testified that the movement could function as a time movement without the bell but that if the movement were to function solely for timekeeping, the alarm feature would be eliminated "plus the bell." As illustrative, the witness produced samples which were received in evidence as exhibit 3, containing a musical feature fastened to it, separate and apart from the movement, the alarm feature being operated by an arm which reaches out from the movement, and exhibit 4 which comprises a single movement between two faces but without any alarm feature.

Testifying further, the witness stated that exhibits 1–A and 1–B as an entirety in the form of exhibit 2 are, upon importation, cased as illustrated by plaintiff's exhibit 5.

On cross-examination, Kaufman stated that a case is used to contain the complete movement; that exhibit 2 is illustrative of an alarm movement without a case; and that the outer portion of defendant's exhibit B (which exhibit is a watch, like exhibit 2, but fitted in a folding leather case similar to the familiar traveling clock) is the case for the movement represented by plaintiff's exhibit 2.

Kaufman, on redirect examination, stated that exhibits 1-A and 1-B constitute a single movement, and that, with regard to exhibit 5, the bell does not enclose the movement or a part thereof but serves only as a bell, "a striking element on which the hammer strikes."

Plaintiff's second witness, Harry Arthur Sampson testified that he had been factory manager for the plaintiff company since 1942. Prior to that, he had been factory manager for the Phinney-Walker Co., the predecessor of Semca (plaintiff herein), and had been in the watch business for 40 years. During that time, he was in charge of personnel "in connection with the assembling, production, timing, equipment control." He stated that he is familiar with the production and assembling of merchandise like exhibits 1-A, 1-B, and 2 which he described as clock movements having an alarm feature. He added that the bell (exhibit 1-B) is an integral part of the movement and that the alarm movement could not function as such without the bell.

When asked by the court if the so-called bell served as a case, the witness replied "It serves as a dust cap or a dust ring but not as a case," pointing out that it encases only a part of the mechanism. The witness recognized exhibit 5 as a mechanism or movement which was "A movement encased."

Aaron Balmages appeared on behalf of defendant. He stated that he has been a customs examiner's aid and watch expert in the office of the United States Appraiser at New York since 1941 and that he was a watchmaker by trade, having had altogether 25 years' experience. In 1943, he took a training course at the Elgin Watchmakers' College at Elgin, Ill., and graduated as a senior watch repairman. He stated that a clock consists of a case and a movement; that in the terms of the trade the movement would include the dial and the hands, the movement itself consisting of two plates and various wheels; that the case normally is composed of a glass which encompasses the dial and the hands, a bezel which holds the glass in place, and the back of the case which protects the movement.

With reference to exhibit 1-A, this witness stated that, in his opinion, it is a movement, and as to exhibit 1-B, that it is a part of the watchcase, stating as well that it serves in another capacity as a sounding board for the alarm mechanism which is contained in the movement.

On cross-examination, the witness described exhibit 2 as a one-jewel alarm clock and, indicating exhibits 1–A and 1–B, described exhibit 1–B to be the back of the case and exhibit 1–A to be the dial, hands, and the movement, plus the alarm mechanism. He added that the alarm mechanism is dependent on the time mechanism and that as a part of the alarm feature there is a hammer which, when a predetermined time is set, strikes against the back of the case (exhibit 1–B) making a bell-like sound. In answer to a question by the court, the witness stated that he does not consider the bell to be a part of the watch movement but that it is a part of the watchcase and that its primary purpose is to protect the movement against harm.

From an examination of the exhibits, particularly 1–A, 1–B, and 2, together with the testimonial record, we are satisfied that the portion of the importation represented by exhibit 1–B is, in fact, part of a watchcase. Although it serves also as a sounding device when struck by the alarm hammer of the movement, it is, nonetheless, an essential part of the case. In other words, the alarm feature of exhibit 1–B is purely incidental to its primary purpose to encase the movement since it would be necessary only to add a glass (crystal) and a bezel to complete the case.

Obviously, exhibits 1–A and 1–B combined, and exhibit 2, are complete watches, regardless of whether or not the alarm feature is made to function.

Even assuming, *arguendo*, that exhibit 1–B should be regarded as part of the alarm movement, it is also a part of the case, and, if it be regarded as a part of both articles, it would fall within the catch-all provision of paragraph 397, *supra*, there being no other specific provision for such a composite article.

Our attention has not been drawn to any legal authority which would justify us in regarding the controverted merchandise as a part of a watch movement. It would be *reductio ad absurdum* to say that an article like exhibit 1–B is a part of a watch movement when attached to exhibit 2 while the same article would be a part of a watchcase if it were attached to defendant's exhibit A.

We have examined the authorities cited by counsel for the parties, but, since those cases differ in essential factual respects from the present controversy, we find it unnecessary to discuss them here. We may add, however, that in *Concord Watch Co., Inc.* v. *United States*, 27 Cust. Ct. 57, C. D. 1348, affirmed on appeal June 3, 1953 (41 C. C. P. A. (Customs) 13, C. A. D. 523), cited by defendant, we held, inferentially at least, "that a watchcase is that article which 'encloses or contains' a watch movement," pointing out that paragraph 367 (f) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 367 (f)), as modified by the Swiss Trade Agreement, 69 Treas. Dec. 74, T. D.

48093, provides for "cases * * * suitable for the enclosure of any of the movements * * * provided for in paragraph 367."

Applying the judicial construction there given, we are satisfied that the article in controversy is a part of a watchcase and, as such, whether or not it be also a part of a movement is immaterial. As appears above, there is no provision covering parts of watchcases in paragraph 367, *supra*, and, therefore, the items before us are articles in chief value of metal, not specially provided for, within the provisions of paragraph 397, *supra*, as classified by the collector of customs.

The protest is overruled and judgment will be entered accordingly.